We've got one case today, Robinson v. Beard, No. 11-9003, and we'll hear from the appellant, or petitioner. Appellant. May I please the court? My name is Matthew Lawry. I'm here on behalf of the appellant, Antoine Robinson. I would like to reserve two minutes for rebuttal.  Thank you. This appeal requires that the defendant be found guilty. It also requires this court to determine whether the death sentence imposed on Mr. Robinson is constitutionally valid. Of the two issues that are before the court, I would like to focus today on the Simmons issue. Simmons starts out by recognizing the reality that most juries think a life sentence means a term of years followed by a release on parole. The court held, and specifically Justice O'Connor's controlling opinion for the court held, that if a prosecutor exploits that reality by putting the issue of future dangerousness, then the defense has a due process right to an instruction that tells the jury the truth, that a life sentence means life without the possibility of parole. In this regard, Pennsylvania is actually an outlier. After Simmons was decided, Pennsylvania is the only state in the country that has life without parole as a sentence, that does not require the instruction in all cases to avoid misleading the jury. But there's also no Supreme Court case that says that that must be the case, right? That says what? That says you must give the instruction at all times, right? No, that's correct. That's correct. But most states have thought that was the wise thing to do. Every state except Pennsylvania. In this case, the commonwealth clearly put Mr. Robinson's future dangerousness at issue. They put it at issue pretty much the same way that you would do if you were prosecuting a federal capital case in the district court, on the district court rooms downstairs, by showing past conduct and by showing character and propensity. The Pennsylvania Supreme Court said that future dangerousness had not been explicitly argued and that's the standard that they apply. How is that a non-reasonable application of Simmons? The question is, was future dangerousness based at issue? It's a reasonable application for several reasons. I think, first off, most clearly, it uses what we have referred to as a magic words analysis. The idea is, if the prosecutor didn't say specific words, future danger, something along those lines, then future dangerousness is not an issue. That's not consistent with the holding that I mentioned just a few minutes ago that Justice O'Connor stated put at issue. That's a much broader holding and Simmons, the court also looked at the entire evidence, all the record, and actually with the Pennsylvania Supreme Court, their holding is much closer to the dissent in Simmons than to the majority. The dissent in Simmons said, we're going to just look at the argument, not look at the evidence. We're going to look at the argument in context, so if we can think of another context besides future dangerousness for the words, that's not going to be future dangerousness. It looked for some express implication, just the way that the statement was sent. In all capital cases, can't you send just about every one of the evidence in some way is calculated toward showing the jury that this person could be a threat in the future? Well, that may be true, but in fact, there was a whole lot in this case. Throughout this case, I count seven categories of future dangerousness, evidence, and argument. First of all, we had the photographs of Mr. Robinson posing with guns, and guns that had nothing to do with the offense. Then we had guns and other gear, a bulletproof vest that he had in his possession, but that again had nothing to do with this offense. Third, the Commonwealth argued repeatedly about Mr. Robinson's character and propensity. They said over and over again, he's a big city guy, and if you disrespect him, he will hurt you. Then at the penalty phase, they put in evidence that he violated probation rules and weapons laws. They put in evidence other examples of assaulted behavior and when he was convicted. They came back again and they showed the penalty phase witnesses the photographs, which are in our briefs and in the appendix. They kept waving these photographs around. The Pennsylvania Supreme Court said that they found that the prosecution had put in character and propensity evidence. That's how we put future dangerousness at issue. Justice Saylor recognized this on the Pennsylvania Supreme Court. That was held to be a harmless error, right? No, Justice Saylor didn't think it was a harmless error. But in the main holding of the courts. The main holding of the court was known that there was no error because... I'm just talking about specific evidence, photographs. It was harmless error at the guilt phase, yes. But they carried over, the prosecutor referred back to all that evidence at the penalty phase, so it wasn't just limited to the guilt phase, as Justice Saylor again pointed out. So what the prosecutor was saying is the probation rules didn't stop him. The ordinary, you know, the criminal laws didn't stop him. The death penalty law didn't stop him. You've got to stop him. And that's a classic future dangerousness argument. The front pillar had not been vacated at all. Counsel, listen. I'm sorry. I'm not sure that what you are saying, your whole argument thus far as to what took place, could be on the issue of whether it would be life sentence or the death penalty. To me, it seems to me that all of those arguments fit there, rather than taking one step further and emphasize some specificity as to future J-dangerousness. I'd like you to comment on that, please. Well, I think it's true that the prosecutor didn't say the words future dangerousness. But I think the way that he proved somebody would be dangerous in the future is by proving past conduct and by proving character and propensity. Propensity means an innate tendency. And so if you prove somebody's propensity to commit murder, you're saying that person is going to be a dangerous person in the future. That's what propensity is. And I think Judge Minaski has started to ask a question about Ron Pilla. If it had not been vacated on other grounds by the Supreme Court, how could he distinguish Robinson's case from Ron Pilla? Well, I think it was obviously vacated, and so it's not controlled. Well, I'm not so sure. I just read Ron Pilla's Supreme Court decision today, and in footnote one it said we don't reckon at all with sentence. So, I mean, it could be argued that that actually is still good law. Well, actually, Your Honor, Albrecht v. Horn, at least, and I think another decision of this Court, say that when a decision is vacated by the Supreme Court Well, it was reversed. Well, it was reversed, yeah. I don't see Ron Pilla was reversed, too. I don't see any difference. It's persuasive authority, but it's no longer controlling. There are a couple of things. Well, how do you distinguish Ron Pilla from Robinson? Why is Robinson entitled to the jury instruction, the life without parole jury instruction, and Ron Pilla was not? Well, there's a couple of things. First of all, I think Ron Pilla, the panel decision in Ron Pilla, is gravely wrong on the law. The panel decision looks at O'Connor as the controlling opinion, and it talks about everything that O'Connor said except for holding. Now, Ed Pillow's review from Williams v. Taylor on is reviewing the holding, not the dicta, of the U.S. Supreme Court precedent. The holding of Justice O'Connor is that when future dangerousness is put at issue, then you have to give the instruction. She also said due process requires the defendant be allowed to have that instruction when the only available alternative sentence to death is life imprisonment without possibility of parole, and the prosecution argues that the defendant will pose a threat to society in the future. But the way I see it is, I mean, that's where she expresses her holding, and I don't think it's reasonable to restrict her holding more than that. Number two, I think that... Isn't it really the controlling opinion in the case? Yes, her opinion is controlling, and her holding is when it's put at issue. The other thing that I would say about Ron Pilla, you know, factually, is that the way the Pennsylvania Supreme Court looked at Ron Pilla was as a case where they are... where the prosecution was trying to prove the aggravating factor of prior violent felonies, which is, you know, purely and simply prior conduct. And this case was not purely and simply about prior conduct. It was also about propensity and character, and all of that was carried through. So this case is like Bronstein, where they put in evidence that Mr. Bronstein had a personality disorder that would make him a dangerous person, and that was argued a penalty phase. And this court said, yeah, in any realistic sense, that was a future dangerousness argument. I'm going to follow along with Judge Bonaski's excellent question, but on Kelly, do we need to consider that at all? I mean, Bronstein and Ron Pilla acknowledge that it seems to be a broadening of sentence. And, of course, it was decided after sentence. So do we need to consider Kelly at all? Well, I don't think you really have to. I mean, the parties have actually kind of agreed that Kelly applies, and my opposing counsel has said that future dangerousness was clearly an issue with Kelly. And I think, for that matter, that Judge Slaughter is right, that Kelly is just an application of Simmons, that it's just saying Kelly is a reminder. We meant what we said in Simmons. But I don't think you've raised a dissent. Judge Slaughter's opinion is a dissent. Yes, but since they're just persuasive, I think hers is more persuasive. But in any event, we don't need Kelly to win. We rely on Simmons. And I think my time is a little past, so. No, no, you have just a little more time. Okay. So let me ask you a question. Of course, you had a summation in the penalty phase. The officer pointed out that there was some mention about the fact that he could be in jail for the rest of his life if that were the way he was going. Is that so? Do you read the comment of the defense counsel that way? There was a reference to that idea. And, number one, the Pennsylvania Supreme Court didn't say anything about that. That's not part of editor review. If you look at Schaefer and look at Kelly, both of them say that kind of reference to the possibility is not enough to satisfy Simmons. And, in fact, in this case, not only did the judge not instruct on life without parole, but defense counsel says, does that mean I can't argue life without parole means life without parole? And the judge says yes. So I think counsel was clearly precluded from really directly informing the jury that that's what life without parole means. Okay. All right. Thank you. We'll hear you out in rebuttal. Thank you. Good afternoon. I'm Jamie Keating on behalf of the Commonwealth of Pennsylvania, specifically the Cullen County District Attorney's Office. I invite this honorable court to compare Simmons, Kelly, and Robinson because I think when you compare those three cases together, it's clear that in this particular case, future dangers was not an issue before this trial. When you look at Simmons itself, specifically the plurality decision, looks at the facts where the defendant sexually assaulted an elderly woman and then beat her to death. So then you have those types of facts. The future dangerousness that was raised in that particular case was that there were multiple prison infractions that the defendant engaged in that was introduced at the trial itself. And then the ruling was that there would be no mention of ineligibility of parole before the sentencing jury. There was a comment then from the prosecutor in that case that says, in its essence, your verdict is self-defense for society. And so based on that, the jury actually came back with a question. Is there a possibility of parole? Now that's very different. In Simmons, that's very different than either Kelly or Robinson or any of the other cases. It shows that there was some confusion on the jury's part whether future dangerousness was involved in the case and whether there was some indication that the person would get parole. Was there any indication at all in the record that he would not be subject to parole? Would the jury have any idea in this case that he would never leave jail if he was sent to jail? That was the rulings of the trial court. The trial court said that they wouldn't get into that. In fact, when the question was asked to the trial court, the trial court said, that's not for your consideration. In essence, Simmons did not do it. So how about this case? In this particular case, this is even more interesting because in this case, when you look at the facts, and let me just answer your question on this in a moment. When you look at Kelly, then you have a jury opinion in which they talk about where the defendant was bound a pregnant woman, stabbed her 30 times, slit her throat, stapled all her bills to her. Future dangerousness were post-charge misconduct where he was trying to attempt escape, had a prison guard to be a hostage, and things of that nature. They called him Billy the Butcher, Blood Billy. There were murders, will be murderers, and I hope you never have to stand against them again. In that case, there was a holding. Ineligible parole instruction was requested, but not given. And, of course, then we have Robinson. In this case, you have a defendant who was shot at his ex-girlfriend because he was upset. And the jury actually found him guilty of attempted murder, so they actually do find that there's a connection of him killing her to get to Rashawn Bass as a result of it. They had dinner, I'm sorry, the victims had dinner. He came to the house unexpectedly. They got into an argument. He said to Tara Hodge, the other individual, ask to leave. She says, no, you have to leave. That's what he pulls out of the gun. She goes, pop, pop, pop. She goes unconscious, and lo and behold, Rashawn Bass is shot in the shoulder, completely defenseless. So there is that connection based on the grave danger, by the way. However, in this particular case, there was a ruling that the court said, you're not going to argue future dangers. But here's the interesting thing. The prosecutor in this particular case, all the arguments that they make about future dangerousness all went to the guilt phase. They all went about, and whether it was correct or not correct, may have been it or not, all of it went to the guilt phase, not to the penalty phase. And what was interesting is the prosecutor in this case said, you know, they, I believe, take out of context the statement, this type of thing has to stop. That's out of context, because the prosecutor in that case, at that comment, was talking about the difference between aggravating circumstances and non-aggravating circumstances. It's not enough to put him to death because he'll kill again. It's because this is what makes an aggravating case an aggravating case, and that's why it applies to certain cases. However, even beyond that then, what the defense ignores is the initial, future dangerousness is expressly rejected by the common law in this argument. In which the prosecutor says, I'm not saying this is some type of weak sentence. This is a very serious sentence. We're not here to choose between the two of them, life and death. We're here to weigh aggravating and mitigating and take the arbitrariness out of this. That's very important, because unlike building a blood mirror or things like that, these are statements, not impassioned ones, but explicitly rejected. And it's the circumstances in the mirror. So here, they're not talking about, when he specifically says, I don't want you to come to the death penalty because of it. What I want you to do is weigh aggravating and mitigating, and that's what kicks the emotion out of this. Well, I'm sure your adversary would say, well, look, any jail sentence is serious business, and particularly a very long one. What I asked you was, did the jury ever find out that he was not eligible for parole? No, they don't. But here's an interesting thing. And here goes in the department's error analysis as well. The jury itself, as you know in Pennsylvania, the jury can find anybody there. And in this particular case, they held, at least one juror held, that Antoine had youth and future possibilities. And Antoine had future contributions to society. So unlike in the Simmons case, where there was confusion or concern that he might get out or things of that nature, here, the jury expressed what he's saying on their own, in their own handwriting, is saying that the defendant has a future and he has future contributions to society. So they're not. That's why I believe that even if you were to say that it was a play, it should promise the defendant that at least one juror was able to say, no, there is no future dangerousness. Even though they used the words of future dangerousness, they found that the defendant had future contributions to society. At least one of them did. So of course, then, what they just came back and said, though, the fact that you show the woman in the head on the radio showing someone who's taking a shower outweighs that. Do I understand your argument to be that the Pennsylvania Supreme Court decision in this matter cannot be defended on the basis that Simmons does not require, or it would be unreasonable to read Simmons as requiring an express argument of future dangerousness, that where future dangerousness is put at issue by the evidence presented in the case, that Simmons would require a life without parole argument, so that your position in this case is simply that the evidence presented did not rise to that level? I don't think that the Supreme Court would go that far in saying it's required to be based on that. And what's interesting, I believe, and I think you hit the nail on the head with Montella, certainly that's not an unreasonable interpretation of the law. Previously, when Judge King came down and looked at all the law, I don't think it's an unreasonable interpretation of the law that Simmons doesn't go so far to say you have to have something beyond what they describe as the magic words in this particular case. And, of course, there are dissents that say, look, they shouldn't even be in the business of doing that. I realize this dissent, I acknowledge that. But, honestly, if that's the case, then it seems as though what they're trying to do is just link themselves to just what was said. Because, really, it's those impassioned statements where it's unfair advantage, where they take advantage of the fact that the jury's not going to know, that they may not believe that they could be eligible for parole, but then they pull the rod out from under their feet. That's essentially what the constitutional issue is all about, is whether it's unfair. How do you process whether the common law that pulls the rod out from under their feet and says, all right, we're not going to say future dangers, but who's a future danger? And, in essence, the jury's dead or under. And in the first particular case, then, they actually did have a question about it, and then they were told by the court, no, that's not an issue for you to decide or for you to look into. So that's why, in this particular case, at least, to the extent that it is, and we're not conceding that it is, but to the extent that it is, it should be harmless error, because, my goodness, the jury actually, at least one of the jurors found that the defendant has a future for contributions to society. Your adversary opened up by pointing out that Pennsylvania is the outlier. We know that there wasn't Simmons instruction in this case, but just out of curiosity, does Pennsylvania follow a different practice now, if you know? I will say that, from a prosecutor's point of view, from a county prosecutor's point of view, and, again, I'm just talking about Carl. I know that my brother and sister, prosecutors in this state, avoid this issue completely, so that it doesn't become an issue, rather than people trying to do that. One of the things, you don't argue, hey, he'll go out and kill again, lock up your children, lock up your farm animals and things like that. Do you still resist the defense's attempt to get a life without parole instruction? Yes, and the reason why is because of the fact that there are lots of different factors that could impact somebody. The length of somebody's appeal could be a factor, and then you're getting all into what happens down the road, and trying to predict what's going to happen in the case. Better yet, let's just decide to avoid the aggravating circumstances, the mitigating circumstances, like they were told to do, in this particular case by the prosecutor. And that's a reasonable stand to take, because that does take the arbitrariness out, it does take the emotion out of it, and it says, alright, listen, you come up with whatever litigation that you want to come up with, and we'll stack it against whatever the aggravators are, and we, as the conscience of the community, will decide whether that way is or not. It seemed to me that if Kelly had become final, or if Kelly had been decided before Robinson's conviction was final, you'd have a much more difficult argument to make that the Pennsylvania Supreme Court's ruling is not an unreasonable application. Respectfully, I think Kelly almost helps us, because if Kelly was such a future danger, you know, I mean, when they call him blood billy, and when he's ashamed, and they bring in all these things that show that he's trying to escape prison, not just that he violated probation, or he didn't follow the rule, but he's trying to break out of prison using a hostage, and to kill someone to do it. That's very different than what happens in Robinson, where all the bad acts, or what they claim to be future dangerousness, it goes to the guilt phase, and goes to whether, again, whether it was error or not error. It's not to paint him as a future danger. It shows that he, whether it's specifically meant to kill, all those things, because remember, voluntary manslaughter was still an issue at this trial in the guilt phase. You know, one of the things they were trying to argue, and things that should be remembered, is that he was impassioned because he found out his ex-girlfriend was with another man. Another thing you have to remember is, at the beginning of the trial, he represented himself in opening statement. And so some of the comments that were made in closing statement by the prosecutor in response to these statements that were made in the opening, as a result of that, I don't think he could have pre-passed by getting up there and saying, okay, but here's a bunch of improper argument, and instead of the prosecutor objecting to it, and having the judge say, well, he's pro se, and why don't we do it, you know, saving you for closing, you have to take it in that context as well, because that happened, and as a result, we're forced to do what we're doing. Those are my main issues that I have with the large amounts of questions. I think as far as the great indifference to life, you know, I just want to point out my very own point, which is that this issue has been changed from whether the judge improperly failed to instruct the jury that the grave risk had done applying to Kara Hodge, but what happened was there was a ruling from the trial judge saying it doesn't apply. But then he changed the ruling and says it does apply, and as a result, that meeting instructs so that that cannot be an error, of course, and then the sufficiency, of course, of grave risk to another person clearly supported by the letter that Judge King got right, the Supreme Court got right, and he asked that that meeting not be defended. Okay. Judge Allister, do you have any questions? I have no questions, Your Honor. I have no questions at all. Okay. Thank you. Thank you. So briefly in the time remaining, Simon, could you pull the microphone toward you a little bit? Thanks, sir. You know, my opponent has argued, really, that all the facts and circumstances of this case are different from Simmons or Kelly. Obviously, there's some distinctions, but the critical thing is if you look at all the evidence and all the arguments going from guilt phase through penalty phase, it's just really unreasonable to say the future dangerousness was not put at issue here. On Hull's error, I think it's important to look at this. Simmons' error, we know from Simmons, forces the jury to make a false choice between death and term of years, and Simmons says this has a pervasive effect on the jury's deliberations. Now, in this case, we had all the future dangerousness evidence and argument that I've talked about, and the defense, to the extent that they could in litigation, they said, well, he's young, and he's got a potential to make a contribution in prison. But that litigation argument was really undercut, just like in Simmons, because the jury didn't know that Mr. Robinson is never getting out if he's sentenced to life without parole. And so if he's a young man and he's going to get out in 15 or 20 years, then that actually makes the future dangerousness argument all the more damaging and has all the greater effect. And so the fact that they said, yeah, maybe he could make a future contribution, that doesn't mean that they are not concerned about him being a danger in the future. That doesn't negate the error. And I would also point out, this is a pretty weak case for death. It's a heat of passion case. It's a case where there's two aggravating factors. One of them, grave risk, we talked about in the briefs. I'm not going to go over it further unless there's questions. But there are serious questions about grave risk. And the other one, three of the seven justices on the Pennsylvania Supreme Court said it doesn't even apply. So it's not an overwhelming, aggravated case. It's a case with some negation, and it's a case where Sims error cannot be harmless. Can I ask one question? Go for it. Of course. The fact that Chief Justice Rehnquist and Justice Kennedy descended in Kennedy, in Kelly, does that not indicate that the Pennsylvania Supreme Court's decision in this case was at least objectively reasonable  I don't think so, Your Honor. I think we have to come back always to the holding in Simmons. And is the Pennsylvania Supreme Court's analysis a reasonable application? Is it a faithful application of Simmons? As I discussed earlier, in reality, what the Pennsylvania Supreme Court is doing is it's following the dissenters in Simmons. It's not following the majority. It's making all these distinctions. You can't find anywhere in the majority in Simmons a requirement that future dangerousness be expressed. Chief Justice Rehnquist joined in Justice O'Connor's opinion, as I recall. I think that's true. And then descended in Kelly, saying he thinks the data seems too far. Yeah. Okay. All right. Thank you. Judge Elster, do we have any questions? No questions. Okay. Thank you. Counsel, thank you for the excellent briefing in this case and excellent oral argument. Do we quickly adjourn? Please rise. The court stands adjourned. Thank you.